IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

ASHLEY THOMAS,                    *
                                  *
       Plaintiff,                 *    CIVIL ACTION NO. 11-00569-B
                                  *
vs.                               *
                                  *
CAROLYN W. COLVIN,                *
Commissioner of Social            *
Security,                         *
                                  *
       Defendant.                 *

## ORDER

Plaintiff Ashley Thomas (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*.  On June 19, 2015, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 33).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.   Procedural History

Plaintiff previously applied for and commenced receiving

supplemental security income benefits as a child in 2001 based on mild mental retardation with features of attention deficit disorder ("ADD") and benign essential treatment of the hand. (Supp. Tr. 337). After Plaintiff obtained age 18, a review was conducted, and her benefits were terminated on July 31, 2009. (Tr. 45). Plaintiff requested a hearing, and in a decision dated October 22, 2010, an Administrative Law Judge determined that Plaintiff is not disabled, and issued an unfavorable decision. (Id.). Plaintiff filed the instant action on October 4, 2011 seeking a review of the unfavorable decision. Subsequent thereto, on December 19, 2011, the Commissioner sought an unopposed sentence six remand on the ground that the claim file, decision and the recording of the administrative hearing could not be located. (Doc. 12). The request was granted, and this action was remanded to the Agency on January 12, 2012. (Doc. 15).

While Plaintiff's original claim was pending before the Agency, she filed a second claim on November 29, 2010. (Tr. 144). In her second application, Plaintiff alleged that she has been disabled since June 1, 2008, due to "ADHD, slow learner, arthritis, tremors, hypertension, major depression, and problem sleeping." (Id. at 144, 148). After Plaintiff's application was denied, her claims were consolidated, and she was granted an

2

administrative hearing before Administrative Law Judge Frank M. Klinger (hereinafter "ALJ") on June 4, 2012. (Id. at 64, 68, 92, 309, 312). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Id. at 316). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 326). On February 20, 2013, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 41). The Appeals Council denied Plaintiff's request for review on September 11, 2013. (Id. at 5). Thus, the ALJ's decision dated February 20, 2013, became the final decision of the Commissioner.

On August 6, 2014, the Commissioner filed a motion to reopen Plaintiff's case, which this Court granted on August 8, 2014. (Doc. 17, 20). Oral argument was conducted on June 19, 2015 (Doc. 34), and the parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II. **Issues on Appeal**

> A.  **Whether the ALJ erred in failing to find that Plaintiff meets Listing 12.05C?**
>
> B.  **Whether substantial evidence supports the ALJ's RFC assessment for a range of light work?**
>
> C.  **Whether the ALJ erred in failing to give substantial weight to the opinion of Plaintiff's treating physician?**

3

> **D.   Whether the ALJ failed to conduct a full and fair hearing?**

**III.  Factual Background**

Plaintiff was born on October 30, 1989, and was twenty-two years of age at the time of her administrative hearing on June 4, 2012.  (Tr. 144, 309).  Plaintiff received special education services while in high school, passed the Alabama High School Graduation exam on the fourth attempt, and graduated from high school.  (Id. at 318, 323).  Plaintiff testified that she cannot read or write at all, except for her name, and can only do a "little" simple math.  (Id. at 316-19).  However, in Plaintiff's Disability Report, she reported that she can read and write.  (Id. at 147).  Additionally, her school records reflect that she made "B's" in English and "C's" in Algebra in the 9th grade, "C's" in English and Geometry in the 10th grade, "B's" in U.S. History, Earth and Space Science, and Creative Writing in the 11th grade, and  a "B" in accounting in the 12th grade.  (Id. at 222; Supp. Tr. 420-21, 428).  Moreover, Plaintiff had a 3.0 GPA in the 11th grade, and upon graduation from high school, her class rank was 31 out of 51.  (Tr. 222, 428).

Plaintiff testified that she lives with her mother and seven siblings with whom she does not get along, that she lays around and watches TV all day, and that she has never worked

4

because she gets "nerv[ous]" and "shakes a lot." (Id. at 209, 317-20).  She also reported pain in her shoulder and back, which makes it difficult for her to bend or stand for more than an hour or so.  (Id. at 325-26). According to Plaintiff, she is depressed and cries approximately three times a day, and she does not go out alone. (Id. at 320, 322).

She also indicated that she does not have any problems with personal care and that she is able to prepare simple meals, such as sandwiches, wash dishes and take out the trash, and do some yard work. (Id. at 155, 164-65).  Additionally, while Plaintiff indicated that has no friends or hobbies and does not like being around people, she also testified that she goes to church every Sunday, sings in the choir, and participates in church activities and trips. (Id. at 157-8, 166-7, 319, 321-24).

## IV.  **Analysis**

### A.    **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[1]  Martin v. Sullivan, 894 F.2d

---

[1] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

5

1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

6

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[2] 20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since November

---

[2] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

29, 2010, the application date, and that she has the severe impairments of social anxiety disorder, mood disorder, history of attention deficit hyperactivity disorder ("ADHD"), very probable borderline intellectual functioning ("BIF"), hypertension, history of fungal dermatitis and tremor, diagnosis of arthritis left shoulder and low back pain etiology unclear, and obesity. (Tr. 27).   The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a range of light work, except that "she could understand and remember simple instructions but not detailed ones.  She could carry out simple instructions and sustain attention to routine/familiar tasks for extended periods. She could tolerate ordinary work pressures but should avoid quick decision-making, rapid changes, and multiple demands.  She would benefit from regular rest breaks and a slower pace but will still be able to maintain a work pace consistent with the mental demands of competitive level work.  Contact with the public should be casual.  Feedback should be supportive.  She could adapt to infrequent, well-explained changes." (Id. at 29).  The ALJ also determined that

while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent they are inconsistent with the RFC assessment. (Id. at 31).

Utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of light work, as well as her age, education and work experience, there are jobs existing in the national economy that Plaintiff is able to perform, such as "cafeteria attendant," "garment sorter," and "shirt presser," all of which are classified as light and unskilled. (Id. at 40). Thus, the ALJ concluded that Plaintiff is not disabled. (Id.).

In determining that Plaintiff did not meet any Listing, the ALJ made the following relevant findings:

> Under the third step, a determination must be made as to whether or not the impairment or impairments are of listing severity. The Medical Listings (20 C.F.R. Part 404, Appendix: I, Subpart P) outline the findings, which must be present under each of the body systems for an impairment to be found disabling. No treating or examining source or medical expert has concluded that the claimant's impairments meet or equal a listed impairment. The claimant's impairments, singularly and in combination, have been compared to all listed impairments, including but not limited to listings 1.01, et seq., 4.01 et seq., 8.01

et seq., and 12.01. I find that the severity of the claimant's impairments does not meet the specific requirements of any of the impairments listed by the Commissioner in Appendix 1. I also find that the severity of the claimant's impairments, even in combination, does not equal the level of severity contemplated in the listings.

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has moderate restriction. Dr. Estock agreed and found the claimant to have moderate restriction in activities of daily living as well (Exhibit B1F). The claimant reported that she does not have problems with her personal care. She reports that she shops. She also reports that she goes to church every Sunday and sings in the choir. There is nothing in the record to support a more than moderate restriction.

In social functioning, the claimant has moderate difficulties. Dr. Estock agreed and found the claimant to have moderate

10

restriction in activities of daily living as well (Exhibit B1F). Although the claimant reports that she does not spend time with others, she does live with her family. Additionally, she shops and goes to church every Sunday and sings in the choir. There is nothing in the record to support a more than moderate restriction.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. Dr. Estock agreed and found the claimant to have moderate restriction in activities of daily living as well (Exhibit BIF). The claimant reports that she listens to the radio and watches television. Further, she graduated from high school and ranked 31st out of 51 in her graduating class. There is nothing in the record to support a more than moderate restriction.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. There is nothing in the record to support a finding of any episodes of decompensation.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked"" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity

> assessment used at steps 4 and 5 of the
> sequential evaluation process requires a
> more detailed assessment by itemizing
> various functions contained in the broad
> categories found in paragraph B of the adult
> mental disorders listings in 12.00 of the
> Listing of impairments (SSR 96-8p).
> Therefore, the following residual functional
> capacity assessment reflects the degree of
> limitation I have found in the "paragraph B"
> mental function analysis.

(<u>Id.</u> at 27-29).

In addition, in assessing the Plaintiff's RFC, the ALJ made the following relevant findings with respect to Plaintiff's impairments:

> **4. After careful consideration of the entire
> record, I find that the claimant has the
> residual functional capacity to perform
> light work as defined in 20 CFR 416.967(b)
> except she could understand and remember
> simple instructions but not detailed ones.
> She could carry out simple instructions and
> sustain attention to routine/familiar tasks
> for extended periods. She could tolerate
> ordinary work pressures but should avoid
> quick decision-making, rapid changes, and
> multiple demands. She would benefit from
> regular rest breaks and a slower pace but
> will still be able to maintain a work pace
> consistent with the mental demands of
> competitive level work. Contact with the
> public should be casual. Feedback should be
> supportive. She could adapt to infrequent,
> well-explained changes (Exhibit B2F).**
>
>                 . . .

In reviewing the record evidence, the ALJ also made the following findings:

At the hearing, the claimant testified that she is 21 years old and graduated high school. She stated that she lives with her mother. She testified that she is unable to work because she gets nervous and shakes a lot. She stated that she was in special education throughout high school (but she did graduate). She testified that she can do simple math (high school records show algebra grades in the 70's, 80's and some 90's) and can only write her name and cannot read. She testified that she gets depressed and cries about three times a day. She testified that she cannot go anywhere by herself. She stated that she sleeps about 12 hours a day. She testified that she goes to church every Sunday and sings in the choir. She testified that she is 5'4" tall and weighs 200 pounds (giving her a BMI of 34.3).

Mr. Andre Tucker, who is the Resources Chairperson from Keith Middle/High School, provided correspondence dated July 20, 2010 stating that the claimant is a former resource student at Keith High School and that she needed intensive remediation strategies to assist her in order to graduate high school (Exhibit B11F).

The claimant's school records from Keith High School do indicate that the claimant was in special education. However, significantly, they also indicate that the claimant ranked 31 out of 51 in her graduating class (with scores in the 70's, 80's and 90's in algebra) (Exhibit B5F).

Although the claimant has described daily activities which are fairly limited, two additional factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any

13

reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision. . . .

In sum, the record reflects that the claimant has overstated the severity and frequency of her symptoms and limitations. There is excessive symptomology and not enough pathology. Thus, I give the subjective allegations little weight in determining [her] residual functional capacity. In fact, it is noted that, the claimant has no neurological deficits, or muscle atrophy, nor significant weight loss, generally associated with protracted, prolonged pain, at a severe level. . . . Here the claimant has alleged disabling impairments, but the medical record has proved otherwise. Accordingly, I find that the claimant's allegations are not credible to the extent that they are inconsistent with the above residual functional capacity since the alleged onset date. . . .

In terms of the claimant's alleged impairments, the record does reflect that the claimant has [been] treated for and does have the following severe impairments: social anxiety disorder; mood disorder, history of attention deficit hyperactivity disorder (ADHD); very probable borderline intellectual functioning (BIF); hypertension; history of fungal dermatitis and tremor, diagnosis of arthritis left shoulder and low back pain etiology unclear; and obesity (Exhibits B1F-B4F, B6F-B10F, B12F-B14F). However, nothing in the record

14

supports a finding that any of the claimant's impairments are disabling.

The claimant has a history of treatment at Cahaba Center for Mental Health (Exhibits B7F-B9F, Bl2F). She received a diagnosis of ADHD (inattentive type) and tremor on several occasions from June 11, 2001 through April 2, 2003 by her treating physician, Dr. Baltz, M.D. On April 2, 2003, Dr. Baltz added the diagnosis of suspected non-compliance. The last treating diagnosis appears on February 9, 2012 and the claimant was diagnosed with social anxiety disorder, "old" ADHD, probable BIF [borderline intellectual functioning], non-compliance and suspected somewhat chaotic home environment. These latter two are not legally compensable by the taxpayers impairments of the claimant. Interestingly, a diagnosis of tremor doesn't appear in the more recent treatment records.

. . .

As for the opinion evidence, I note that the above limitations are consistent with and supported by records and reports obtained from the claimant's treating and examining physicians and with the evidence as a whole. I have considered all medical evidence of record and any opinions of treating and examining physicians and have concluded that the record does not contain any functional limitations greater than those determined in this decision.

On March 10,2011, the claimant was examined at UAB Selma Family Medical Center (Exhibit B4F). The records indicate the reason for the visit as "disabled secondary to hypertension", which certainly indicates a mindset, if not a motivation. Of course there are not overwhelmingly large numbers of people who are disabled for even light and sedentary work due to hypertension and

15

this claimant is certainly not one of them.
The assessment states: "Visit: to issue a
certificate of disability", which certainly
indicates a mindset, if not a motivation.
However, no such "certificate" was issued
and, in fact, the results of the examination
were all totally normal, including the blood
pressure reading of 126/76, with no
limitation of movement and no neurological
deficits.  The examination record was signed
by Dr. Boyd Bailey, M.D.

I have considered the examination results
from UAB and give Dr. Bailey's opinion
significant weight. While not a treating
physician, Dr. Estock was an examining
physician. His opinion is generally
supported by his own clinical examinations
and testing, as discussed above, and is
generally consistent with the record as a
whole.

Dr. Nina Tocci, Ph.D. conducted a
consultative examination on March 23, 2011
(Exhibit B3F). Dr. Tocci administered the
Wechsler Adult Intelligence Scale 4 (WAIS-
IV) and the claimant received a full-scale
score of 49 which would classify her
intelligence in the mentally retarded range.
However, Dr. Tocci opined that the results
of the examination cannot be considered
valid noting her effort was questionable and
the score was not indicative of the
evidential history. Further, she notes that
at times the claimant gave responses that
appeared contrived. Dr. Tocci stated that
"if she is to be tested again, she would
benefit from understanding the importance of
complete cooperation."

I have considered and give Dr. Tocci's
opinions appropriate weight. While not a
treating physician, Dr. Tocci was the
Agency's examining psychologist.  Her
opinion is generally supported by her own
clinical examinations and testing, as

16

discussed above, and is generally consistent with the record as a whole.

Dr. Robert Estock, M.D., performed a Mental Residual Functional Capacity Assessment on April 5,2011 (Exhibit B2F). Dr. Estock's assessment finds that the claimant's understanding and memory ranged from not significantly limited to only moderately limited. The claimant's sustained concentration and persistence ranged from not significantly limited to only moderately limited. Dr. Estock assessed that the claimant's social interaction ranged from not significantly limited to only moderately limited and the claimant's adaptation ranged from not significantly limited to only moderately limited. Dr. Estock opined that the claimant could understand and remember simple instructions but not detailed ones. The claimant could carry out simple instructions, sustain attention to routine/familiar tasks for extended periods. The claimant could tolerate light work pressures and should avoid quick decision-making, rapid changes and multiple demands. The claimant would benefit from regular rest breaks and a slower pace but would still be able to maintain a work pace consistent with the mental demands of competitive level work.  Contact with the public should be casual.  Feedback should be supportive.  The claimant could adapt to infrequent, well-explained changes.

Dr. Estock also conducted a Psychiatric Review Technique of the claimant on April 5, 2011 (Exhibit B1F).  He evaluated the claimant under 12.02 - Organic Mental Disorders, 12.04 - Affective Disorders and 12.06 - Anxiety-Related Disorders.  His records indicate a medically determinable illness of BIF [Borderline Intellectual Functioning] and a history of ADHD under 12.02, major depression under 12.04, social anxiety under 12.06.  Dr. Estock opined that

17

in activities of daily living, the claimant
has moderate restriction, in social
functioning moderate restriction, in
concentration, persistence and pace the
claimant has moderate restrictions.

I give Dr. Estock's opinions contained in
the Mental Residual Functional Capacity
Assessment and the Psychiatric Review
Technique significant weight to the extent
that they support the residual functional
capacity stated herein. While not a
treating source, Dr. Estock was the Agency's
consulting psychologist. Although, he did
not examine the claimant, he provided
reasons for his opinions indicating that
these opinions were grounded in the evidence
of record. . . .

On June 11, 2012, the claimant's treating
physician, Dr. Baltz, M.D., completed a
medical statement concerning depression with
anxiety, obsessive compulsive disorder
(OCD), PTSD or panic disorder regarding the
claimant's Social Security disability claim
(Exhibits B13F, B14F).

Dr. Baltz lists sleep disturbance and
apprehensive expectation as the claimant's
signs and symptoms. In activities of daily
living he finds the claimant with moderate
restriction. In social functioning he finds
the claimant with marked restriction. He
finds that deficiencies of concentration,
persistence or pace resulting in frequent
failure to complete tasks in a timely manner
(in work settings or elsewhere) are present.
He does not assign any repeated episodes of
decompensation and finds that complete
inability to function independently outside
the area of the patient's home due to panic
attacks is absent. He finds that the
claimant is moderately impaired in the
ability to remember locations and work-like
procedures, the ability to understand and
remember detailed instructions, the ability

to carry out detailed instructions, the
ability to maintain attention and
concentration for extended periods, the
ability to sustain an ordinary routine
without special supervision, the ability to
ask simple questions or request assistance
and the ability to maintain socially
appropriate behavior and to adhere to basic
standards of neatness and cleanliness. He
finds that the claimant is markedly impaired
in the ability to perform activities within
a schedule, maintain regular attendance, and
be punctual within customary tolerances, the
ability to work in coordination with and
proximity with others without being
distracted by them, the ability to complete
a normal workday and workweek without
interruptions from psychologically based
symptoms and to perform at a consistent pace
without an unreasonable number and length of
rest periods, the ability to interact
appropriately with the general public, the
ability to accept instructions and respond
appropriately to criticism from supervisors,
the ability to get along with coworkers or
peers without distracting them or exhibiting
behavioral extremes, the ability to respond
appropriately to changes in the work
setting, the ability to travel in unfamiliar
places or use public transportation and the
ability to set realistic goals or make plans
independently of others.

Although Dr. Baltz is a treating physician,
his assessment and findings regarding the
claimant's restrictions and impairments are
not supported by the medical evidence
(including his own relatively brief
treatment records) and are not consistent
with other substantial evidence in the
record (SSR 96-2p). There are very few
signs, symptoms or objective findings for
such severe restrictions. There is little
evidence of a marked impairment of
abilities, social or otherwise. According
to testimony, about the only tasks that she

19

attempts are largely sleeping, laying down
and watching TV.  I don't see how he or we
can say that she doesn't complete these in a
timely manner.  I believe that the problem
is largely volitional - she hasn't even
tried to do much more - and I give Dr. Baltz
opinions little weight. . . .

In sum, the above residual functional
capacity assessment is supported by the
objective evidence, the treatment records,
the opinions of the claimant's friend, Dr.
Bailey, Dr. Tocci, Dr. Estock, and the
claimant's daily activities of living, as
well as the record as a whole. . . .

(Id. at 29-35).  The Court now considers the foregoing in light

of the record in this case and the issue on appeal.

> 1.  **Issues**
>
> **A. Whether the ALJ erred in failing to
> find that Plaintiff meets Listing
> 12.05C?**

In this case, Plaintiff claims that the ALJ erred in

failing to find that she meets Listing 12.05C.  Specifically,

Plaintiff argues that she has satisfied the criteria of Listing

12.05C (mental retardation) because she was awarded benefits as

a child on September 10, 2001, based on a diagnosis of mild

mental retardation and based on IQ test scores placing her

within the mild mental retardation range.[3]    (Doc. 25 at 4, 6).

---

[3] As noted, *supra*, the record shows that Plaintiff was awarded
benefits when she was eleven years old based on the diagnoses of
mild mental retardation with features of attention deficit
disorder ("ADD") and benign essential tremor of the hand.
(Supp. Tr. 338-39).  According to the ALJ's decision dated

Thus, Plaintiff argues, she was entitled to a presumption of mental retardation in her present application, and the ALJ erred in failing to apply the presumption.  (Id.).

The Commissioner counters that, despite Plaintiff's previous IQ scores and childhood diagnosis of mental retardation, the ALJ properly found that Plaintiff is not disabled because the substantial evidence of Plaintiff's current adaptive functioning does not support a finding of mental retardation but, rather, is more consistent with borderline intellectual functioning.  The Commissioner maintains that the ALJ's determination is supported by the opinions of consultative psychological examiner Dr. Nina Tocci, Ph.D., State Agency reviewing psychiatrist, Dr. Robert Estock, M.D., and treating psychiatrist, Dr. Timothy Baltz, M.D. (Doc. 29 at 10).  Having reviewed the record at length, the Court agrees with Defendant that Plaintiff's claim is without merit.

As stated above, the Social Security regulations set forth a five-step sequential evaluation process to determine whether a claimant is disabled.  At step three, the claimant has the burden of proving that an impairment meets or equals a listed impairment.  See Harris v. Commissioner of Soc. Sec., 330 Fed.

---

September 10, 2001, Plaintiff received full scale IQ scores of 51 and 58 on two WISC-III tests, placing her in the mild mental retardation range of intellectual functioning.  (Id.).

21

Appx. 813, 815 (11th Cir. 2009) (unpublished)[4] (citing Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991)).  Section 12.00 contains the Listings for mental disorders, which are arranged in nine diagnostic categories: "[o]rganic mental disorders (12.02); schizophrenic, paranoid and other psychotic disorders (12.03); affective disorders (12.04); intellectual disability (12.05); anxiety-related disorders (12.06); somatoform disorders (12.07); personality disorders (12.08); substance addiction disorders (12.09); and autistic disorder and other pervasive developmental disorders (12.10)."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).

In his decision, the ALJ states that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06."  (Tr. 28).  The ALJ then goes on to discuss the "paragraph B" and "paragraph C" criteria, in relation to the above-referenced listings.  While the ALJ's decision does not reference Listing 12.05C, the decision makes clear that in adopting the opinions of Dr. Tocci, including her opinion that Plaintiff's I.Q. scores were not valid, the ALJ implicitly found that Plaintiff could not meet Listing 12.05C.

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11TH CIR. R. 36-2.

To establish disability under section 12.05C, a claimant must present evidence of "[a] valid verbal, performance or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05C.  In addition, the claimant must satisfy the 'diagnostic description' of mental retardation in Listing 12.05 (the listing category for mental retardation/intellectual disability),[5] which provides that mental retardation "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.05.

The law in this Circuit provides that a valid IQ score of

---

[5] On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability."  See Hickel v. Commissioner of Soc. Sec., 539 Fed. Appx. 980, 982 n.2 (11th Cir. 2013) (citing 78 Fed. Reg. 46,499, 46,501, to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1)).  "This change was made because the term 'mental retardation' has negative connotations, and has become offensive to many people. Id. (citations and internal quotation marks omitted). "The Social Security Administration stated that the change does not affect the actual medical definition of the disorder or available programs or services." Id. (citations and internal quotation marks omitted). As in Hickel, this opinion uses the term "mental retardation" and "intellectual disability" interchangeably.

60-70 creates a rebuttable presumption that the claimant manifested deficits in adaptive functioning prior to the age of twenty-two. See Hodges v. Barnhart, 276 F. 3d 1265, 1268-69 (llth Cir. 2001). Thus, "a claimant meets the criteria for presumptive disability under section 12.05C when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than a 'minimal effect' on the claimant's ability to perform basic work activities." Smith v. Commissioner of Soc. Sec., 535 Fed. Appx. 894, 897 (llth Cir. 2013)(quoting Lowery v. Sullivan, 979 F. 2d 835, 837 (11th Cir. 1992)).

The presumption under 12.05C can be rebutted, however, when the IQ score is inconsistent with record evidence of a claimant's daily activities and behavior. See Popp v. Heckler, 779 F.2d 1497, 1499-1500 (llth Cir. 1986). Accordingly, the ALJ is tasked with determining whether there is sufficient evidence (relating to plaintiff's daily life) to rebut the presumption. See Grant v. Astrue, 255 Fed. Appx. 374, 375 (llth Cir. 2007); Hartman v. Colvin, 2014 U.S. Dist. LEXIS 91467, *7, 2014 WL 3058550, *3 (S.D. Ala. July 7, 2014).

The only current evidence in the record in this case related to IQ testing is a report by consultative examining psychologist, Dr. Nina Tocci, Ph.D., in which she reported that

24

she administered an IQ test to Plaintiff on March 23, 2011, when Plaintiff was twenty-one years old, and Plaintiff received a Full Scale IQ score of 49.[6]   (Id. at 210-11).   However, Dr. Tocci

---

[6] The undersigned recognizes that in the earlier ALJ decisions, as well as in the opinion of the Appeals Council in this case, there are references to other IQ tests taken by Plaintiff in 1999, 2001, 2006, and 2008.  (Supp. Tr. 338; Tr. 5-6, 45-57, 210).   However, Plaintiff's file from the earlier proceedings was lost, and those tests, which were not a part of the record before the ALJ or before this Court, cannot be considered in this appeal.

That being said, the undersigned further notes that, even if the other IQ tests were considered, they would not change the outcome of this case.  With respect to Plaintiff's IQ scores from 1999 and 2001, they were not current at the time of the ALJ's February 20, 2013 decision and, thus, are not material to this case.  See Vargas v. Commissioner of Soc. Sec., 2014 U.S. Dist. LEXIS 181043, *26, 2015 WL 328110, *9 (M.D. Fla. Jan. 26, 2015) ("intelligence tests administered to children tend to be less reliable than those performed on adults. . . .   Indeed, as a general rule IQ scores obtained before the age of 16 are considered current only for two years.") (quoting Social Security Administration, Program Operations Manual System (POMS) Dl 24515.055); Seabrooks v. Colvin, 2014 WL 5483169, *10 (N.D. Fla. Oct. 29, 2014) (accord).

Furthermore, Plaintiff's 2006 CTONI Nonverbal Intelligence Score of 82 indicated "low average" intellectual functioning, not mental retardation.  (Tr. 48).   Thus, those results do not support Plaintiff's claims in this case.

Finally, the ALJ's decision dated October 22, 2010, references a 2008 WAIS-III Full Scale IQ Score of 58 (indicating mild mental retardation), which, according to the ALJ's decision, the administering psychologist, Dr. Lee Stutts, Ph.D., opined was valid.  (Id. at 48).   However, the ALJ in that decision determined that the score, even if valid, was insufficient to establish mental retardation under 12.05C because Plaintiff lacked significant deficits in adaptive functioning to meet the requirements of Listing 12.05C.  (Id. at 48, 51-52).   The ALJ further noted that Plaintiff's school

found the score to be invalid because of "poor effort" and "contrived" responses. (Id.). The ALJ found that Dr. Tocci's opinions were entitled to appropriate weight as they were supported by her clinical examination and testing of Plaintiff, as well as the record as a whole. A review of the record evidence in this case provides substantial support for the ALJ's findings. The record reflects that although Plaintiff received special education services while in school, her overall school records, including grades, class ranking, and graduation all indicate that Plaintiff functions at the borderline intelligence level rather than the mental retardation level. (Tr. 222; Supp. Tr. 420-21, 428). Further, in February 2012, Plaintiff's long-time treating psychiatrist, Dr. Timothy Baltz, M.D., likewise

_____

records and 2006 CTONI IQ testing showed "significantly higher functional capacity" than represented by Plaintiff's 2008 WAIS-III scores. (Id. at 47-49). In addition, a teacher questionnaire completed in 2008 showed that Plaintiff had no more than "slight" problems in any listed area of acquiring and using information, in using adequate vocabulary and grammar to express thoughts and ideas, or in social and interpersonal skills, and no problems in carrying out single or multi-step instructions, focusing long enough to finish an assigned task, following rules, or self care. (Id. at 50). The ALJ in the 2010 proceedings concluded that, even if Plaintiff's IQ scores were valid, the evidence of Plaintiff's adaptive functioning skills rebutted the presumption of disability, and Plaintiff failed to meet the requirements of Listing 12.05C. (Id. at 51-52). The Undersigned finds that, as in the 2010 proceedings, the substantial evidence of Plaintiff's lack of significant deficits in adaptive functioning in this case would likewise rebut any presumption under 12.05C.

diagnosed Plaintiff with probable "borderline" intellectual functioning. (Id. at 247).

Given the absence of a valid Full Scale IQ score of 60-70 in this case, no 12.05C analysis was required. See Reid v. Commissioner of Soc. Sec., 2012 U.S. Dist. LEXIS 187808, *18, 2012 WL 7682813, *6 (S.D. Ga. Dec. 14, 2012), *report and recommendation adopted*, 2013 WL 960814 (S.D. Ga. Mar. 12, 2013) ("Without credible, valid IQ scores below 70, the ALJ was not required to find Plaintiff mentally retarded pursuant to Listing 12.05(B) or (C)."); accord Anderson v. Astrue, 2012 U.S. Dist. LEXIS 124827, *14-18, 2012 WL 3834838, *4-6 (D.S.D. Sept. 4, 2012) ("An ALJ is not required to accept proffered IQ scores and may reject scores that are inconsistent with the claimant's daily activities, medical history, educational background, and behavior. . . . Absent a valid IQ score between 60 and 70, [plaintiff] cannot meet Listing 12.05C, and the ALJ was not required to address it in her findings."); cf. Hartman, 2014 U.S. Dist. LEXIS 91467, 2014 WL 3058550 at *5 (where the plaintiff met both of the requirements in 12.05C, the ALJ was required to acknowledge the applicability of Listing 12.05C and to afford the plaintiff the rebuttable presumption of deficits in adaptive functioning); Hogue v. Colvin, 2014 U.S. Dist. LEXIS 59667, 2014 WL 1744759, *5 (S.D. Ala. Apr. 30, 2014) (where the

plaintiff had a valid score between 60 and 70, and the ALJ found that the Plaintiff had other severe impairments, the ALJ was required to address 12.05C and apply the rebuttable presumption).   Because the record in this case contains no evidence of a valid IQ score between 60 and 70, the ALJ was not required to address Listing 12.05C, and Plaintiff's claim that the ALJ erred in failing to do so is without merit.

**B.   Whether substantial evidence supports the ALJ's RFC assessment for a range of light work?**

Next, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to mention her depression, arthritis, tremor, and hypertension in his RFC analysis.   (Doc. 25 at 4).   To the contrary, the record shows that the ALJ did discuss these impairments in his decision and found that, while they were severe, none of them were disabling in nature.   (Tr. 27-29, 31-33).

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations.   See 20 C.F.R. § 404.1545.   Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his impairments, and must be supported by substantial evidence.   See Beech v. Apfel, 100 F. Supp. 2d

1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the Plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet her burden in this case.

In this case, the ALJ's physical RFC assessment is consistent with the opinion of Plaintiff's treating physician, Dr. Boyd Bailey, M.D., who noted on March 10, 2011, when Plaintiff came in for a "certificate of disability," that her physical examination was completely "normal" and that she had no limitations whatsoever. (Id. at 219).

Likewise, the ALJ's mental RFC assessment is consistent with the evidence related to Plaintiff's mental impairments. As discussed, on March 23, 2011, Dr. Tocci administered the WAIS-IV, and Plaintiff received a full Scale IQ score of 49. (Id. at 210). However, Dr. Tocci found the score to be invalid because of Plaintiff's "poor effort" and "contrived" responses. (Id. at 211). Dr. Tocci also found Plaintiff's mental examination to be largely "normal," except for a noted poor fund of information

29

and inability to abstract. (Id. at 210). Dr. Tocci opined that Plaintiff was operating in the "borderline" range of intellectual functioning and that she could make informed personal and financial decisions. (Id.).

Significantly, in February 2012, Plaintiff's long-time treating psychiatrist, Dr. Timothy Baltz, M.D., likewise diagnosed Plaintiff with probable "borderline" intellectual functioning, as well as social anxiety disorder, "old" ADHD, non-compliance, and suspected chaotic home environment. (Id. at 247). Dr. Baltz's treatment records during that time further reflect that Plaintiff followed sports, that she was very excited about NBA and NFL sports, that she enjoyed writing in her journal,[7] and that she was "feel[ing] good." (Id. at 247, 249, 251). Even so, in June 2012, Dr. Baltz completed a Medical Source Statement (MSS) concluding, without explanation, that Plaintiff had "marked" limitations in social functioning and in nine work-related functional areas. (Id. at 298-99).

Also, the record contains the Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique completed by State Agency psychiatrist, Dr. Robert Estock, M.D., on April 5, 2011, in which he noted Plaintiff's borderline intellectual

---

[7] The evidence of Plaintiff's journal writing and her grades in high school, as detailed herein, belies her testimony that she can neither read or write.

functioning and opined that Plaintiff had no more than a
"moderate" degree of limitation in activities of daily living,
social functioning, and maintaining concentration, persistence,
or pace, and no episodes of decompensation. (Id. at 192, 201-
07).

In addition, Plaintiff's high school records reflect that,
although she was receiving special education services, she made
"B's" in English, "C's" in Algebra, "B's" in U.S. History,
Science, and Creative Writing, and a "B" in accounting. (Id. at
222; Supp. Tr. 420-21, 428). In addition, she had a 3.0 GPA in
the 11th grade, graduated from high school with a class rank of
31 out of 51, and passed the high school graduation exam, albeit
on the fourth attempt. (Id. at 222, 428).

While Plaintiff's testimony regarding her activities of
daily living reflects that she lives with her family and lays
around and watches TV all day, the evidence indicates, as the
ALJ found, that this activity is volitional and not the result
of any disability, as evidenced by the fact that she goes to
church every Sunday, sings in the choir, and attends church
activities and outings. (Id. at 166, 209, 317-20, 323-24).
Plaintiff acknowledged that she has no problems with personal
care, can prepare simple meals, wash dishes, take out the trash,
and do housework. (Id. at 155, 164-65).

Based on foregoing, the Court finds that the substantial evidence of record supports the ALJ's RFC assessment for a range of light work, with the ALJ's stated restrictions for simple, routine work, which fully accommodate Plaintiff's mental and physical limitations.   Therefore, Plaintiff's claim is without merit.

## C.   Whether the ALJ erred in failing to give substantial weight to the opinion of Plaintiff's treating psychiatrist?

Plaintiff next argues that the ALJ erred in rejecting the opinion of her treating psychiatrist, Dr. Baltz, in the June 2012 MSS that Plaintiff has "marked" limitations in social functioning and in nine work related functional areas.   (Tr. 298).   Plaintiff argues that the ALJ erroneously relied, instead, on the 2011 Mental RFC and Psychiatric Review Technique completed by State Agency psychiatrist, Dr. Estock, in which he opined that she had no more than "moderate" limitations in any functional area.   (Tr. 201-07).   The Commissioner counters that Dr. Baltz's severely restrictive limitations in the June 2012 MSS are inconsistent with his own treatment records, as well as the substantial record evidence in the case.   Having reviewed the record at length, the Court agrees with Defendant that Plaintiff's claim is without merit.

As part of the disability determination process, the ALJ is

32

tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). The opinion of "a one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160).

In addition, the Eleventh Circuit has held that an ALJ is "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly

qualified physicians and psychologists who are also experts in Social Security disability evaluation.'"   Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)).   "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources."   Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record.   Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).   "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence."   Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion."   Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

As discussed above, the record shows that in February 2012,

only four months before Dr. Baltz completed the MSS in June
2012, he diagnosed Plaintiff with probable "borderline"
intellectual functioning, social anxiety disorder, "old" ADHD,
non-compliance, and suspected somewhat chaotic home environment.
(Tr. at 247, 298).   In addition, his treatment records during
that time, up until four weeks before he completed the MSS, show
that Plaintiff was enjoying following sports, socializing with
relatives and neighbors, enjoying writing in her journal, and
doing well.  (Id. at 247, 249, 251).   The severity of the
limitations set forth by Dr. Baltz in the June 2012 MSS are
inconsistent with this evidence, as well as with the opinions of
Dr. Tocci and Dr. Estock, discussed above.  Dr. Baltz's opinions
are also inconsistent with the evidence related to Plaintiff's
activities of daily living, as detailed herein.   For each of
these reasons, the Court finds that the ALJ had good cause to
discredit them, and Plaintiff's claim that the ALJ erred in
failing to assign Dr. Baltz's opinions substantial weight is
without merit.[8]

### D. Whether the ALJ failed to conduct a full and fair hearing?

---

[8] Because the ALJ had good cause to discount Dr. Baltz's
opinions, the opinions of non-examining State Agency
psychiatrist, Dr. Estock, do not conflict with any credible
examining source, and thus, they were properly considered by the
ALJ. See Milner, 275 Fed. Appx. at 948.

Last, Plaintiff argues that, if the ALJ chose not consider her childhood diagnosis of mental retardation and associated IQ scores, he should have ordered a consultative examination and required IQ testing, and his failure to do so was error.   The Court disagrees.

It is well established that a hearing before an ALJ in social security cases is inquisitorial and not adversarial.   A claimant bears the burden of proving disability and of producing evidence in support of her claim, while the ALJ has "a basic duty to develop a full and fair record."   Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); see also Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007).   This duty to develop the record exists whether or not the claimant is represented by counsel.   Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995).

42 U.S.C. 421(h) provides that "in any case where there is evidence which indicates the existence of a mental impairment," a determination that a claimant is not disabled "shall be made only if the Commissioner . . . has made every reasonable effort to ensure that a qualified psychiatrist or psychologist" has offered an opinion or reviewed the record.   Id.   In McCall v. Bowen, 846 F.2d 1317, 1320 (11th Cir. 1988), the Eleventh Circuit stated that where there is evidence indicating the

36

existence of a mental impairment, the Commissioner may determine that the claimant is not under a disability only if the Commissioner has made "every reasonable effort to obtain the opinion of a qualified psychiatrist or psychologist." Id. (quoting 42 U.S.C. § 421(h) (internal quotation marks omitted). Later, in Sneed v. Barnhart, 214 F. Appx. 883, 886 (11th Cir. 2006) (unpublished), a panel of the Eleventh Circuit stated that "McCall interprets § 421(h) [to] require[] an ALJ to order a psychological consultation where there is evidence of a mental impairment." Id.

However, the ALJ is not required to order a consultative examination where the record contains sufficient evidence to permit the ALJ's RFC determination. Ingram, 496 F.3d at 1269 ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."); see also Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007) (unpublished) ("the ALJ need not order an additional consultative examination where the record was sufficient for a decision.").

In this case, the ALJ did order a consultative examination by Dr. Tocci, who conducted IQ testing in 2011 and found that

37

Plaintiff's Full Scale Score of 49 was invalid because of poor effort and because the answers were "contrived." (Tr. 210-11). In addition, the record contains the opinion of State Agency psychiatrist Dr. Estock, who reviewed Plaintiff's medical records and completed a Psychiatric Review Technique and a Mental RFC Assessment, finding that Plaintiff had no more than "moderate" limitations in any functional area. (Id. at 201-06). Thus, it is clear that the ALJ complied with 42 U.S.C. § 421(h) in having Dr. Tocci examine Plaintiff and conduct IQ testing and in having Dr. Estock conduct a review of the medical records and complete a Psychiatric Review Technique and a Mental RFC Assessment.

This evidence, along with Plaintiff's treatment records and testimony, was sufficient to enable the ALJ to determine Plaintiff's mental functional limitations from her impairments, and there is nothing in the record which suggests that Plaintiff's limitations exceed those in the RFC. The ALJ's decision reflects that he had before him sufficient evidence upon which to make the RFC determination, that he thoroughly examined all of the record evidence, and that his determination that Plaintiff can perform a range of light work is supported by substantial evidence. Accordingly, Plaintiff's claim is without merit.

38

V.    <u>Conclusion</u>

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED.**

**DONE** this **21st** day of **July, 2015.**

                              /s/ SONJA F. BIVINS
                    **UNITED STATES MAGISTRATE JUDGE**